UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SABRIYA ZAYNAB SILVA,<br><br>    Plaintiff,<br><br>v.<br><br>ABBOTT LABORATORIES, INC., and<br>MONDO INTERNATIONAL, LLC,<br><br>    Defendants. | CIVIL ACTION<br>NO. 20-11921-TSH |

**Report and Recommendation**

**July 6, 2021**

Hennessy, M.J.

    Before the Court is Plaintiff Sabriya Zaynab Silva's motion to remand this case to the Worcester District Court. [Dkt. No. 22]. Defendant Abbott Laboratories, Inc. ("Abbott") opposes this motion. [Dkt. No. 24].[1] This matter was referred to me on December 1, 2020, pursuant to 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b). [Dkt. No. 25]. The matter is now ripe for adjudication. For the following reasons, I recommend the motion to remand be ALLOWED.[2]

I.    BACKGROUND

    On May 27, 2019, Plaintiff began working as a products engineer for Defendants Abbott and Mondo International, LLC (collectively "Defendants"). [Dkt. No. 1-1 ("Compl.") ¶¶ 1–3, 5,

---

[1] Co-defendant Mondo International, LLC, consented to Abbott's removal, [Dkt. No. 13], but took no position regarding the motion to remand and submitted no briefing. [Dkt. Nos. 23, 24, 29, 32].

[2] I note that this Court issued a Recommendation regarding a motion to remand in Andino-Aponte v. Abbott Labs, Inc. [No. 20-CV-11919, Dkt. No. 32]. Abbott is a co-defendant in both cases, and the plaintiff in Andino-Aponte and here share the same counsel. Further, the complaint, filings, and issues of law in this case are nearly identical to those in Andino-Aponte. Accordingly, this Recommendation largely tracks the Recommendation in Andino-Aponte.

1

6]. Defendants paid Plaintiff $30 per hour. [Id. ¶ 7]. To understand her hours, Plaintiff asked if she would be permitted to work more than 40 hours per week. [Id. ¶ 9]. Abbott's management, including Thomas Gamble, answered in the affirmative. [Id.]. When Plaintiff asked Gamble to clarify whether she was allowed to bill 12-hour days, Gamble again answered in the affirmative. [Id. ¶ 10]. Plaintiff then proceeded to work pre-approved overtime throughout her employment. [Id. ¶ 11]. She reported her hours to her supervisor, Candice Cooper, who accepted timecards that reflected this overtime. [Id. ¶¶ 8, 13]. On September 3, 2019, Plaintiff submitted her hours for the week of August 26, 2019, through August 30, 2019. [Id. ¶ 14]. She billed 70.5 hours, reflecting the hours she worked. [Id. ¶ 15]. On September 3, 2019, Cooper told Plaintiff to reduce her hours to 47.5. [Id. ¶ 16]. Despite protesting that she had indeed worked 70.5 hours, Plaintiff reluctantly modified her time sheet. [Id. ¶ 17]. One day later, Cooper informed Plaintiff that her employment was terminated based on "falsified time records." [Id. ¶ 20]. After exhausting her administrative remedies, [Id. ¶ 21], Plaintiff sued Defendants in the Worcester District Court, alleging failure to pay wages under Mass. Gen. Laws ch. 149 §§ 148, 150; failure to pay due overtime pursuant to Mass. Gen. Laws ch. 149 § 148 and 151, § 1A; Retaliation pursuant to Mass. Gen. Laws ch. 149 § 148A; Quantum Meruit; and wrongful termination in violation of public policy. [Id. Counts I–V]. On October 26, 2020, Abbott removed this case to federal court, asserting diversity jurisdiction pursuant to 28 U.S.C. 1332(a). [Dkt. No. 1]. Plaintiff moved to remand the case on the ground that the amount in controversy does not exceed the jurisdictional threshold of $75,000. [Dkt. No. 20].

II.   LEGAL STANDARD

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court

of the United States." 28 U.S.C. § 1441(a). The district courts have original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." Id. § 1332(a). Therefore, if the parties in a state court action are citizens of different states and the amount in controversy exceeds $75,000, a defendant may remove the action to a federal district court. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Id. § 1447(c). "[A]ny doubts about the propriety of removal should be construed against the party seeking removal." In re Pharm. Indus. Average Wholesale Price Litig., 509 F. Supp. 2d 82, 89 (D. Mass. 2007).

The parties do not dispute that they are all citizens of different states. [Compl ¶¶ 1–3]. The only question here is whether the amount in controversy exceeds $75,000. To answer this question, courts look to whether the complaint alleges in good faith that the damages exceed $75,000. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938). If the jurisdictional amount is not clear from the face of the complaint, the party seeking removal bears the burden of showing a reasonable probability that the amount in controversy exceeds $75,000. Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48–49 (1st Cir. 2009); Youtsey v. Avibank Mfg., Inc., 734 F. Supp. 2d 230, 237–38 (D. Mass. 2010) (applying the Amoche standard to a non-class action). The same standard is applied if the complaint alleges an amount lower than the jurisdictional threshold. See Baker v. Equity Residential Mgmt., L.L.C., 996 F. Supp. 2d 1, 5 (D. Mass. 2014).

The First Circuit has articulated several considerations for courts determining the amount in controversy on a motion to remand. "First, the reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard adopted by several circuits." Amoche, 556 F.3d at 50. Second, "determining whether a case belongs in federal court should be

done quickly, without an extensive fact-finding inquiry." Id. (quoting Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001)). Third, "deciding whether a defendant has shown a reasonable probability that the amount in controversy exceeds [the jurisdictional threshold] may well require analysis of what both parties have shown. Merely labeling the defendant's showing as 'speculative' without discrediting the facts upon which it rests is insufficient." Id. at 51. Fourth, the amount in controversy is measured at the time of removal. Id. Fifth, "likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." Id.

III.     DISCUSSION

In her statement of damages appended to the complaint, Plaintiff alleges unpaid wages totaling $1,035. [Dkt. No. 1 ¶¶ 16–17]. If she is successful, she would also receive treble damages amounting in total to $3,105. [Id. ¶ 17]; Mass. Gen. Laws ch. 149 § 150. Plaintiff also alleges $50,000 of emotional distress damages in her statement of damages. [Dkt. No. 1 ¶ 18]. This brings Plaintiff's total alleged damages to $53,105. Plaintiff is, on alleged damages alone, $21,895 shy of the amount in controversy requirement.

Abbott asserts that nevertheless, the amount in controversy exceeds $75,000 because Plaintiff's prospective attorney's fees have a reasonable probability of exceeding $21,895. [Id. ¶ 20]. Plaintiff suggests that future attorney's fees are an inappropriate consideration in the amount in controversy calculus, citing Barbuto v. Advantage Sales & Marketing, LLC, 148 F. Supp. 3d 145, 148 (D. Mass. 2015), where Judge Talwani excluded attorney's fees that "ha[d] not yet been incurred [because they] cannot be said to be in controversy at the time of removal." [Dkt. No. 21 at 3]. Plaintiff nevertheless acknowledges that other judges in the District of Massachusetts have included prospective attorney's fees in the amount in controversy. [Id.]. In the alternative,

4

Plaintiff argues that Abbott has not met its burden of proving by a reasonable probability that the attorney's fees will exceed $21,895. [Id.].

In this recommendation, I make three findings that ultimately favor remanding the case: (1) both parties have failed to show any reasonable probability that emotional distress damages in this case exceed $50,000; (2) future attorney's fees may be included in the amount in controversy; and (3) even if Plaintiff had sufficiently alleged $50,000 in emotional damages, Abbott has not proven there is a reasonable probability that the future attorney's fees will exceed $21,895. I address each finding in turn.

   A.  <u>Plaintiff's Alleged Amount in Controversy</u>

In her statement of damages, Plaintiff alleges $50,000 in emotional distress damages. Generally, where a plaintiff claims damages in apparent good faith, the allegation controls for the purposes of determining jurisdiction. <u>St. Paul Mercury Indem. Co.</u>, 303 U.S. at 288. However, "jurisdiction is defeated notwithstanding the plaintiff's good faith in claiming for the jurisdictional amount if one familiar with the applicable law could not reasonably have concluded that the claim was worth the jurisdictional amount." <u>Esquilin-Mendoza v. Don King Prods., Inc.</u>, 638 F.3d 1, 4 (1st Cir. 2011); <u>Allen v. Santander Bank</u>, No. CV 16-12527-RGS, 2017 WL 600761, at *1 (D. Mass. Feb. 14, 2017). As it is the court's "responsibility to police the border of federal jurisdiction," I question the amount in controversy alleged in this case. See <u>Spielman v. Genzyme Corp.</u>, 251 F.3d 1, 4, 5 (1st Cir. 2001).

While potential emotional damages are difficult to predict, jurisdiction cannot be created by mere utterance of emotional distress. See <u>Rosario Ortega v. Star-Kist Foods, Inc.</u>, 370 F.3d 124, 129 (1st Cir. 2004), <u>reversed on other grounds sub nom.</u>, <u>Exxon Mobil Corp. v. Allapattah Servs.</u>, 545 U.S. 546 (2005); <u>Jimenez v. Avis Rent-A-Car Sys.</u>, 574 F.2d 37, 40 (1st Cir. 1978); <u>Torres v.

Drs. Ctr. Hosp. Manati, CA. No. 11-147-SEC, 2012 WL 1952833 (D.P.R. May 30, 2012). For example, in Rosario Ortega, a mother claimed $250,000 in emotional distress damages based on witnessing her daughter cut her hand on a can of tuna. 370 F.3d at 129. Her daughter's medical expenses totaled less than $5,000 and even with future medical expenses would not exceed $25,000. Id. Emotional distress damages therefore had to exceed $50,000 to meet the jurisdictional threshold. The court held that such a minor injury to her daughter could not justify $50,000 of emotional distress damages to satisfy the amount in controversy requirement. Id.

      Here, similar logic prevails. Plaintiff does not allege any specific emotional damages in her complaint, and merely states in a conclusory manner on her civil damages sheet that they total $50,000.[3] [Compl. at p. 10]. See Williams v. Toys "R" Us – Del., Inc., No. CV 15-13943-MLW, 2016 WL 5723588, at *1 (D. Mass. Sept. 28, 2016) (quotations omitted) (noting "civil cover sheets are inherently imprecise" when estimating damages). The complaint itself does not reference any emotional damages outside of stating that "Plaintiff suffered emotional distress as a result of Defendants' penalization and retaliatory action." [Id. ¶ 33]. Plaintiff neither experienced nor witnessed any physical harm. Her alleged $50,000 of emotional damages derives from $1,035 in lost wages and termination, and the circumstances surrounding her termination all allegedly occurred over the course of two days. [Id. ¶¶ 16–20]. Indeed, such an emotional distress award would be some 15 times the trebled wages in controversy. Though such an outcome is not impossible, I cannot reasonably conclude Plaintiff's emotional distress claim is worth that amount given the allegations. See Esquilin-Mendoza, 638 F.3d at 4.

---

[3] A civil damages sheet is mandatory in the Worcester District Court. Mass. Gen. Laws ch. 218, § 19A. Under the same statute regarding District Courts, civil actions "may proceed in the courts only if there is no reasonable likelihood that recovery by the plaintiff will exceed $25,000." Mass. Gen. Laws ch. 218, § 19.

Further, the Court notes that counsel for Plaintiff has brought a nearly identical case, Andino-Aponte v. Abbott Labs, Inc., in which the exact same emotional damages are alleged. [No. 4:20-CV-11919, Dkt. No. 1 ¶ 18]. This suggests that the amount of emotional damages alleged on the civil damages sheet was not specific to the case at hand. In any case, the complaint allegations coupled with the statement of damages are insufficient to show the amount in controversy requirement is satisfied. See Barbuto, 148 F. Supp. 3d at 148 (questioning the plaintiff's determination of damages on a civil cover sheet); Baker, 996 F. Supp. 2d at 5–6 (same).

B. Prospective Attorney's Fees

However, even if I were to credit Plaintiff's assertion of emotional distress damages, because Abbott fails to offer facts supporting projected Plaintiff's attorney's fees of more than $21,895, I still find jurisdiction lacking.

1. Whether the Amount In Controversy May Include Prospective Attorney's Fees

As a threshold matter, it is unclear whether a court may consider prospective attorney's fees in the amount in controversy. Generally, a court must factor in attorney's fees when calculating the amount in controversy if the award of those fees is authorized by statute or contract. Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 89 (1st Cir. 1991). Here, attorney's fees are authorized by statute. See Mass. Gen. Laws ch. 149 § 150; ch. 151 § 1B. "[W]hile attorney's fees may, if authorized by law, constitute part of the amount in controversy, they may only do so to the extent reasonable." World Boxing Ass'n, 942 F.2d at 90 (emphasis in original). The First Circuit has not, however, decided whether a "reasonable" estimate includes prospective attorney's fees, or simply the fees that have been earned at the time of removal. Mitchell v. Select Comfort Retail Corp., No. 20-CV-10110-DJC, 2020 WL 4049895, at *3 (D. Mass. July 20, 2020). Courts in the District of Massachusetts have reached different conclusions.

7

Compare Barbuto, 148 F. Supp. 3d at 148 (declining to consider prospective attorney's fees) with Baker, 996 F. Supp. 2d at 8 (using future attorney's fees to calculate the amount in controversy); Youtsey, 734 F. Supp. 2d at 238 (same).

Within the First Circuit, the case to most closely evaluate the question of prospective attorney's fees as a component of the amount in controversy is Raymond v. Lane Construction Corp., 527 F. Supp. 2d 156 (D. Me. 2007). In Raymond, the court noted that the First Circuit had not ruled on whether prospective attorney's fees could be included in the amount in controversy calculation. Id. at 159. After careful analysis, the court held in favor of including prospective attorney's fees, noting "courts routinely consider future damages, such as pain and suffering, medical bills, and lost wages. A rule that treats attorney's fees differently from any other category of damage for purposes of ascertaining the amount of the 'matter in controversy' draws no support from the language of the statute." Id. at 163. Several courts in the District of Massachusetts have followed the decision in Raymond. See, e.g., Youtsey, 734 F. Supp. 2d at 238; Baker, 996 F. Supp. 2d at 8.

On the other hand, in Barbuto, the court held that "[f]ees that have not yet been incurred cannot be said to be in controversy at the time of removal." 148 F. Supp. 3d at 148. Noting that that the statute—28 U.S.C. § 1332(a)—excludes costs from the amount in controversy requirement, the court reasoned that a similar logic justified the exclusion of prospective attorney's fees. Id. at 148–49. Specifically, the court characterized the exclusion as "justified by legal scholars as 'an inappropriate element for inclusion in determining whether the jurisdictional amount requirement has been satisfied since that must be ascertained at the beginning of the case.'" Id. at 149 (quoting Wright & Miller, Federal Practice & Procedure, § 3712 (4th ed. 2020)). Recognizing the divergent opinions in this Circuit, several courts have declined to rule on whether the inclusion of prospective

8

attorney's fees is proper. See Cherelli v. InStore Grp., LLC, No. CV 18-10717-DPW, 2021 WL 91272, at *3 (D. Mass. Jan. 11, 2021); Mitchell, 2020 WL 4049895, at *3.

I agree with the court in Raymond that future attorney's fees are not per se barred from inclusion in the amount in controversy. Certainly, the statute does not expressly exclude them. See 28 U.S.C. § 1332(a). And while the Supreme Court has yet to rule on prospective attorney's fees, it has stated that, for the purposes of an amount in controversy requirement, attorney's fees are not "costs" excluded from the amount in controversy. See Raymond, 527 F. Supp. 2d at 162 (citing Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933)). It is therefore reasonable to treat statutorily mandated attorney's fees more like prospective damages than prospective costs. Determinations of prospective damages—such as loss of future income—can be included in an amount in controversy determination. See Williams, 2016 WL 5723588, at *2. While Barbuto correctly notes that such prospective attorney's fees are difficult to forecast, 148 F. Supp. 3d at 149, and Raymond flags the danger that a party may "puff up" attorney's fees to meet the amount in controversy, 527 F. Supp. 2d at 163, these concerns are not sufficient to categorically exclude prospective attorney's fees. Accordingly, for purposes of this report and recommendation, I find that the amount in controversy may include prospective attorney's fees.

    2.   Application of Prospective Attorney's Fees in This Case

I turn next to Abbott's showing in support of Plaintiff's prospective attorney's fees. As the removing party with the burden of showing a reasonable probability that the amount in controversy exceeds $75,000, Youtsey, 734 F. Supp. 2d at 238, Abbott "must allege facts with sufficient particularity" to support projected attorney's fees. Baker, 996 F. Supp. 2d at 5. Even those courts that include prospective attorney's fees in their determinations are reluctant to find they exceed the amount in controversy unless "even one extra dollar" would place the plaintiff over the amount

in controversy. Compare Raymond, 527 F. Supp. 2d at 164 (holding that the defendant bore its burden because "even one extra dollar of attorney's fees would place [the plaintiff] over the [jurisdictional] threshold") with Youtsey, 734 F. Supp. 2d at 238–39 (remanding a case under the Massachusetts Fair Wage Act because there was no reasonable probability that the attorney's fees would total more than $21,000); see also Huston v. FLS Language Centres, 18 F. Supp. 3d 17, 24 (D. Mass. 2014) (defendant could not prove by a reasonable probability that attorney's fees would exceed $68,149.17); Arrigo v. Scholarship Storage, Inc., No. CA 10-11650-MLW, 2011 WL 3584715, at *6 (D. Mass. Aug. 10, 2011) (defendants did not meet the amount in controversy requirement where they did not establish that attorney's fees for the class representative would exceed $13,000); Dias v. Genesco, Inc., 365 F. Supp. 3d 158, 163 (D. Mass. 2019) ("In any event, the Court doubts that it could find any amount of prospective attorney's fees proven by a preponderance of the evidence or reasonable probability at the beginning of a case . . . .").

Here, I find that Abbott has not met its burden of establishing that those fees would exceed $21,895. Abbott barely mentions attorney's fees in its notice of removal, simply stating "Plaintiff's future attorneys' fees incurred after removal are likely to exceed $21,895." [Dkt. No. 1]. In support of this assertion, Abbott offers an affidavit of Plaintiff counsel's reporting fees from a different case which establishes the rate at which associates' time is billed. [Dkt. No. 24-1]. But Abbott then proceeds to construct a hypothetical template of hours Plaintiff's case would need for a complaint, witness depositions, and written discovery. [Dkt. No. 24 at 9]. This construct is speculation and insufficient to meet Abbott's burden. See NFS Leasing, Inc. v. Hill, No. CIV.A. 11-11476-LTS, 2012 WL 527854, at *2 (D. Mass. Feb. 17, 2012) ("The general assertion that the case will take more than one hundred hours of attorney time and that at least one attorney at the Plaintiff's law firm charges in excess of three hundred dollars per hour is insufficient [to prove

prospective attorney's fees]."). Further, while Abbott incorporates into its hypothetical construct of costs the possibility of summary judgment, it fails to acknowledge that "it is equally likely that this case will . . . settle early." Waith aka v. Amazon.com, Inc., No. CV 17-40141-TSH, 2018 WL 4092074, at *2 (D. Mass. Aug. 28, 2018).

Nor does Abbott succeed by citing several wage-and-hour cases where a plaintiff's lawyer received well over $21,895.[4] [Dkt. No. 24 at 9]. Such comparisons rely on unfounded assumptions and are too speculative and imprecise to carry Abbott's burden. See Youtsey, 734 F. Supp. 2d at 238–39 (noting that where a defendant bears the burden of proving the amount in controversy exceeds the jurisdictional threshold, "speculation on its part is simply insufficient."). Finally, as proof that, with prospective attorney's fees, the case will reach the jurisdictional threshold, Abbott references Plaintiff counsel's refusal to stipulate that legal fees would be lower than $21,895. This is unavailing. A plaintiff is "not required to enter a stipulation to limit [his] damages for purposes" of defeating jurisdiction. Barbuto, 148 F. Supp. 3d at 149 (quotations omitted). Accordingly, Abbott has failed to meet its burden of showing by a reasonable probability that the amount in controversy exceeds $75,000.

C. Fees and Costs Award

For the first time in her reply brief, Plaintiff requests attorney's fees and costs for removal. [Dkt. No. 29 at 3]. Setting aside that Plaintiff failed to raise this request in her initial brief,[5] an award of fees and costs would be inappropriate in this case. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result

---

[4] Porcal v. Ciuffo, No. 4:10-CV-40016-TSH (D. Mass. 2013); Mogilevsky v. Bally Total Fitness Corp., 311 F. Supp. 2d 212 226 (D. Mass. 2004); Jin Hai Li v. Foolun, Inc., 273 F. Supp. 3d 289, 296 (D. Mass. 2017).

[5] "[W]hen 'a moving party raises an argument for the first time in a reply brief, that argument is waived.'" Smith v. Liberty Mutual Ins. Co., No. 1:20-CV-11583-ADB, 2021 WL 1581017, at *3 (D. Mass. Apr. 22, 2021) (quoting Napert v. Gov't Emps. Ins. Co., No. 13-cv-10530, 2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013)).

of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). The law in this area is unsettled, and in this case "the facts are not so one-sided as to have made remand a foregone conclusion." Youtsey, 734 F. Supp. 2d at 239. Therefore, I find an award of attorney's fees and costs to Plaintiff inappropriate in this case, and I recommend the request be DENIED.

IV.  CONCLUSION

For the foregoing reasons, I recommend the motion to remand to the Worcester District Court be GRANTED and the request for fees and costs be DENIED. [6]

 /s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[6] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of service of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72(b)(2). The United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See, e.g., United States v. Diaz-Rosado, 857 F.3d 89, 94 (1st Cir. 2017); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).